## IN THE UNITED STATES DISCTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHRYN K. CULLEY | : | |
| 751 Vandenburg Road, #411 | : | CIVIL ACTION |
| King of Prussia, PA 19406 | : | |
| | : | NO.: _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GREINER PACKAGING CORP. | : | |
| 222 Enterprise Way | : | **JURY TRIAL DEMANDED** |
| Pittston, PA 18640 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Kathryn K. Culley (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     Plaintiff has initiated this action to redress violations by Greiner Packaging Corp. (*hereinafter* "Defendant") of the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 *et seq*.), the Pennsylvania Human Relations Act ("PHRA"), and the Pennsylvania Wage and Collection Law ("PWCL" - 43 P.S. §§ 260.1 *et. seq.*).[1]  As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes.  She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under the ADEA.  Plaintiff's PHRA claims however will mirror identically her federal claims under the ADEA.

redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where is subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5.      Plaintiff properly exhausted her administrative remedies before proceeding in this Court for violations of the ADA by timely filing a Charge with the Equal Employment Opportunity Commission and by filing the instant Complaint within 90 days of receiving a notice of case closure and/or right-to-sue letter.

## **PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual with an address as set forth in the caption.

8.      Greiner Packaging Corp. produces rigid, plastic packaging for customers globally, with a Pennsylvania facility located at the address set forth in the above caption.  Plaintiff was hired through and worked at this address.

9.     At all relevant times herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff is a 59-year-old female and one of the oldest employees out of 105 employees at Defendant's Pennsylvania facility.

12.     Plaintiff was hired by Defendant on or about November 1, 2018, as a Key Account Manager (primarily a sales role).

13.     Beginning in or about November of 2020, Plaintiff fell under the supervision of General Manager/President, Rachel Hanks (*hereinafter* "Hanks"), who had preplaced Plaintiff's prior direct manager in the same role, Steve Gendreau (*hereinafter* "Gendreau") (following a period of vacancy).

14.     In the nearly 2 ½ years under prior management, including Gendreau, Plaintiff was deemed a stellar employee who was given very positive performance feedback, both verbally and in writing, with no history of warning(s) or progressive discipline prior to her approximate 3.5 months of employment under Hanks.

15.     In fact, in or about February of 2020, Plaintiff was recognized for her positive performance and was named as the Key Account Manager for the Lactalis North American Group (*hereinafter* "Lactalis"), Defendant's single largest customer globally.   Plaintiff received very positive feedback both verbally and in writing for the management of the Lactalis account from the customer, Defendant's CEO, and top-level executives.

16.     Upon information and belief, Hanks is approximately 15-20 years younger than

Plaintiff.

17.     In or about November/December of 2020, Plaintiff became aware through observations and her personal experience that Hanks clearly favored younger employees, and exhibited clear hostility and animosity toward Plaintiff because of her advanced age.  For example, but not intended to be an exhaustive list, Hanks:

    a.   Treated Plaintiff in a rude and demeaning manner and regularly talked down to her;

    b.   Selectively applied policies to Plaintiff, unlike Plaintiff's younger co-workers;

    c.   Stripped Plaintiff of key accounts and/or responsibilities and gave them to younger current employees and/or new hires;

    d.   Expressed an intent to discipline Plaintiff for issues Plaintiff showed Hanks were mistaken perceptions on her part.  Hanks informed Plaintiff that no such discipline would appear in her personnel file;

    e.   On more than one occasion, Hanks excluded Plaintiff from meetings that directly involved her key accounts.  When Plaintiff inquired to Hanks about being excluded, Hanks routinely dismissed her and held the meetings without her; and

    f.   Plaintiff was informed by Hanks in or about December of 2020, that Plaintiff would be training Isaiah Woodruff (*hereinafter* "Woodruff" - age 25 and a recent college graduate/hire) to co-manage Plaintiff's key accounts (despite Woodruff being solely employed as an Analyst – reporting to the Finance Manager/Department). Plaintiff was shocked as co-management was unnecessary (although she always followed any directive given to her), and Woodruff lacked any reasonable qualifications.

18.     Plaintiff objected to/complained of the aforesaid instances of discriminatory and disparate treatment on several occasions.  For example, in or about December of 2020, Plaintiff

4

specifically informed Hanks she believed Hanks was "discriminating" against her because of her "age" and trying to replace her with someone "younger."   Plaintiff again reiterated these concerns to Hanks in 2021.

19.     Instead of meaningfully addressing Plaintiff's concerns or ceasing her discriminatory behavior toward her, Hanks subjected Plaintiff to increased hostility and animosity through verbal admonishment and disparate treatment.  When Plaintiff confronted Hanks to ask if she was subjecting any other Account Managers to such unfair treatment, Hanks mockingly replied, "No, just you."

20.     Thereafter, Plaintiff was discriminatorily and retaliatorily terminated on or about February 12, 2021, under the guise of a purported "job elimination."

21.     Defendant's purported reason for Plaintiff's termination – "job elimination" – is completely false and pretextual because: (1) as of Plaintiff's termination, she handled "key" accounts (including Defendant's largest global account – Lactalis – because of her skill(s), qualification(s), and success rate(s); while at least 2 other younger individuals who substantially underperformed in comparison to Plaintiff were retained (performing similar roles, albeit possessing varying job titles); (2) Plaintiff was replaced by Woodruff, a substantially younger employee, who now publicly holds himself out as an "Account Manager" (and who handles Plaintiff's prior accounts); (3) Plaintiff was the ***_sole job elimination_*** in mid-February of 2021 in her group; ***there was not even an overall reduction in headcount*** in her group, as Plaintiff was functionally replaced by Woodruff (a young college graduate with only prior Back-Office administrative experience); and (4) Plaintiff was terminated in close proximity to her objections to/complaints of age discrimination.

22.     As further evidence of discrimination and retaliation, following her termination, Plaintiff was offered unsolicited severance pay if she agreed to waive legal claims against

Defendant, including those for age discrimination[2] and was turned down for requests for any alternative jobs that were available and for which Defendant was actively hiring.

23.    Therefore, Plaintiff believes and avers that she was subjected to a hostile work environment and terminated because of her advanced age and for objecting to/complaining of unfair treatment because of her age.

### COUNT I
### Violation of the Age Discrimination in Employment Act ("ADEA")
#### ([1] Age Discrimination; [2] Hostile Work Environment; and [3] Retaliation)

24.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

25.    During her tenure with Defendant, Plaintiff had no history of significant discipline.

26.    Plaintiff was treated disparately with respect to policies, work, and termination contrary to individuals substantially younger than her.

27.    Plaintiff objected to the aforementioned instances of age discrimination and disparate treatment by Defendant's management on multiple occasions but her concerns were ignored, and Defendant's management continued to subject her to hostility, animosity, and disparate treatment because of her advanced age.

28.    Plaintiff was abruptly terminated on or about February 12, 2021, for pretextual reasons.

---

[2] *See e.g.*, *Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115, at *25 (E.D. Pa. May 22, 2013) (employer's decision to offer Plaintiff severance on the condition he waive any FMLA claims, even though not a company policy, supported finding of pretext in FMLA claim, among other facts); *see also Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085, at *13-14 (W.D. Wash. June 2, 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *Bartlett v. NIBCO Inc*., 2011 U.S. Dist. LEXIS 28072, at *11 (N.D. Ind. March 18, 2011) ("Severance pay packages contingent upon a release of claims which are offered *contemporaneously with the notice of termination* are *not* covered by [Rule 408]," and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case.) (citation omitted); *EEOC v. Republic Servs*., *Inc*., 640 F. Supp. 2d 1267, 1300 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy).

29.     Upon information and belief, after Plaintiff was terminated, her work for Defendant has been performed by a much younger, less experienced individual(s) who does not possess the level of qualifications and seniority Plaintiff had obtained working with Defendant.

30.     Therefore, Plaintiff believes and avers her termination was completely pretextual and that she was really terminated because of her advanced age and/or her objections to/complaints of age discrimination.

31.     These actions as aforesaid constitute unlawful age discrimination and retaliation under the ADEA.

**COUNT II**
**Violations of the Pennsylvania Wage & Collection Law(s)**
**(Failure to Pay Full Wages)**

32.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

33.     Plaintiff had an agreement with Defendant whereby Defendant agreed to compensate Plaintiff for all services she performed during her employment.

34.     In or about 2020, as part of her annual compensation, Vice President of Operations, Krunoslav Obrovac (*hereinafter* "Obrovac"), agreed to pay Plaintiff a bonus comprised of a Fixed Bonus Amount ("FBA") and a Variable Bonus Amount ("VBA") as follows:

    a.   The FBA is based on 20% of the annual fixed salary ($116,0000) (local currency gross) which equates to $16, 240.00;

    b.   The VBA is paid at achieving 100% of the corporate and local Earnings Before Interest and Taxes ("EBIT"), further broken down into;

        i.   20% - Consolidated Greiner Packaging International ("GPI") - EBIT as per standard reporting subgroup financials for GPI;

        ii.   80% - Audited local financial statement of the local entity; and

       iii.   The VBA potential in percentage of annual fixed salary at target achievement of 100% and capped at 130% which equates to $9,049.00.

35.    At the time of her termination, based on the aforesaid criteria, Plaintiff was owed a bonus of approximately $18,792.00, comprised of:

    a.   Taking over and managing additional accounts of Defendant's quality targets with a value of 30% of the FBA, which is the equivalent of $4,872.00 in bonus pay;

    b.   Developing a pipeline of additional business for $3 million USD with probability of over 80% for 2021 with a value of 30% of the FBA, which is the equivalent of $4,872.00 in bonus pay; and

    c.   Overachieving the 2020 sales budget by over 10%, which has a value 40% of the FBA and is the equivalent of $6,496.00 in bonus pay.

36.    Plaintiff, despite earning approximately $18,792.00 in bonus compensation, was only compensated approximately $11,971.00.  Thus, following her termination, Plaintiff is still owed approximately $6,821.00 as part of her annual compensation.

37.    Under the Pennsylvania WPCL, "wages" are defined as "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation.  The term 'wages' also includes *fringe benefits* or *wage supplements* whether payable by the employer from his funds or from amounts withheld from the employees' pay by employer." See 43 P.S.C.A. 260.2a (emphasis added).  Bonuses fall within this definition of "wages." *See Gautney v. Amerigas Propane, Inc.*, 107 F. Supp. 2d 634 (E.D. Pa. 2000) (bonuses owed under employment contracts are "wages" within the meaning of Pennsylvania WPCL).

38.    Plaintiff was therefore not paid her full wages in accordance with the provisions under the Pennsylvania Wage Payment and Collection Law.

39.     These actions as aforesaid constitute willful violations of the Pennsylvania Wage Payment and Collection Law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  May 10, 2021